# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | |
|---|---|
| CRAWFORD NIXON, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> NATIONWIDE MUTUAL ) <br> INSURANCE COMPANY, ) <br> ) <br> Defendant. ) <br> ) | 7:15-cv-00186-LSC |

### Memorandum of Opinion

Plaintiff Crawford Nixon ("Plaintiff") filed this action against Defendant Nationwide Mutual Insurance Company ("Nationwide"), alleging that Nationwide breached its flood insurance contract with Plaintiff by denying Plaintiff's claim for benefits under the policy. Before this Court is Nationwide's Motion for Summary Judgment (Doc. 62), which has been fully briefed by the parties and is ripe for review. As explained more fully herein, Nationwide's motion is due to be granted.

### I.     Background[1]

---

[1] When reviewing a motion for summary judgment, this Court "constru[es] the evidence in the light most favorable to the non-moving party." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1263–64 (11th Cir. 2010).

The federal government developed the National Flood Insurance Program ("NFIP") to establish a nationwide partnership with private insurance companies to provide flood insurance. *See generally* 42 U.S.C. § 4001 (outlining the congressional findings and declaration of purpose for the NFIP). The program is administered by the Federal Emergency Management Agency ("FEMA"). *Id.* § 4011(a). Each policy issued under the NFIP contains identical language, as the policy is a codified federal regulation. 44 C.F.R. pt. 61 app. A(2). The policy is also subject "[t]o the [National Flood Insurance Act of 1968], the Amendments thereto, and the Regulations issued under the Act." *Id.* § 61.4.

Nationwide issued a flood insurance policy to Plaintiff and his father under the NFIP for a single-family home located in Tuscaloosa, Alabama. The home is situated several hundred feet from the Black Warrior River, and the structure is elevated by pilings. Around April 14, 2014, heavy rain caused the Black Warrior River to rise and flood the surrounding area. The floodwater came within several feet of Plaintiff's home.

Although the flood event did not cause physical water damage to the house, as the water receded, Plaintiff discovered that it had caused changes to the earth between the house and the river. Specifically, the flood created an eight-to-ten-foot vertical drop along the river side of Plaintiff's property. The remainder of the

embankment between the vertical drop and the river sloped toward the river. The flood event also resulted in a large crack in the ground on the east side of the house, which continued under the slab. Plaintiff noticed that the piling supporting the northeast corner of the structure had shifted, the slab had cracks running through it, and the deck had begun to separate from the house.

After the flood, Plaintiff's father contacted their local agent, who visited the property and notified Nationwide of the loss on April 15, 2014. An independent engineer retained by Nationwide inspected the property on April 21, 2014. His initial report concluded that the embankment had saturated with water from the flood and had sloughed down the hill, which caused the displacement of the foundation piling and the void beneath the slab. Relying on this report, Nationwide denied Plaintiff's claim on May 8, 2014, on the basis that earth movement, a peril that is excluded from coverage under the policy, caused the damage to the home.

Plaintiff's father retained Forest J. Wilson ("Wilson"), a local geotechnical engineer, to evaluate the property and to suggest a course of action to stabilize the embankment and prevent it from failing under the house. Wilson disagreed with the conclusions made by Nationwide's engineer about the cause of the soil displacement around Plaintiff's home. Wilson opined that "the flood water penetrated sand seams in the river bank and created weak zones," which caused

the embankment to collapse as the river returned to normal levels. (Doc. 64-8 at 6.) He further observed that "[t]he collapsed river bank directly north of the house has resulted in movement of the embankment beneath the residence" and recommended that Plaintiff stabilize the embankment by excavating loose soil and "constructing a rock buttress." (*Id.* at 6, 7.)

Plaintiff's father employed JFJ Excavating, LLC ("JFJ Excavating") to stabilize the embankment, at a cost of $57,050. JFJ Excavating estimated that another $119,000 of work would be necessary to complete the stabilization. As a result, Plaintiff and his father considered relocating the home further back from the river because it would be "safer in the long run" and "more cost efficient." JFJ Excavating prepared a new "home pad" on the property for a total cost of $44,191.55. Plaintiff's father also obtained two bids to move the structure to the new pad, but the house has not been relocated. Plaintiff hired a carpenter to repair the deck, but no other work has been performed on the home. Plaintiff continues to reside there.

Believing that the damage to the home was covered under the policy, Plaintiff appealed Nationwide's denial of his claim for benefits to FEMA on July 7, 2014. As part of his appeal, Plaintiff submitted Wilson's report and photographs of the property. Plaintiff also included a proof of loss form, which the local agent had

prepared and sent to Plaintiff's father for his signature. Plaintiff's father signed the form and returned it to the agency, but another individual dated the form July 3, 2014. The proof of loss claimed damages in the amount of $129,000.

FEMA affirmed Nationwide's denial of Plaintiff's claim on August 6, 2014, determining that the reports from Wilson and the independent engineer hired by Nationwide demonstrated that earth movement, rather than floodwaters, directly caused the damage. Nationwide informed Plaintiff in a letter dated January 9, 2015, that it would "stand[] by [its] previous claim denial letter of May 8, 2014," and "den[ied] further payment" because the proof of loss was submitted to FEMA, rather than to Nationwide, and was received more than sixty days after the loss. Plaintiff then filed the instant action on January 29, 2015.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate upon a showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if the record contains sufficient evidence for a reasonable jury to return a verdict in favor of the nonmoving party. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). A fact is material if, under the substantive law of the claim, the fact's existence

"affect[s] the outcome of the case." *Chapman*, 229 F.3d at 1023. However, the interpretation of the terms of an insurance policy is a question of law for this Court to decide. *Carneiro Da Cunha v. Standard Fire Ins. Co./Aetna Flood Ins. Program*, 129 F.3d 581, 584 (11th Cir. 1997).

## III. Discussion

### A. Failure to Submit Proof of Loss

Nationwide contends that it is entitled to summary judgment because Plaintiff failed to submit a proof of loss within sixty days, as required by the terms of the policy. Plaintiff responds that the proof of loss dated July 3, 2014, "was dated by someone other than the insured" and that Nationwide has provided no evidence that the proof of loss was late. Plaintiff also argues that he was excused from submitting a proof of loss because Nationwide denied coverage before the proof of loss was due to be submitted under the policy terms.

The terms of Plaintiff's policy provide that in the event of a loss, the insured must "[g]ive prompt written notice to [the insurer]" and, within sixty days of the loss, "send [the insurer] a proof of loss" describing the amount the insured claims under the policy and furnishing specific information related to the covered property. (Doc. 64-2 at 14–15.) "[T]he insured must adhere strictly to the requirements of the [SFIP]," including the proof-of-loss requirement, in order to

recover under the policy. *Sanz v. U.S. Sec. Ins. Co.*, 328 F.3d 1314, 1318 (11th Cir. 2003). The insured's failure to submit a proof of loss within the sixty-day period "eliminates the possibility of recovery" absent "a written waiver of the requirement" from the Federal Insurance Administrator. *Id.* at 1319; *see* 44 C.F.R. pt. 61 app. A(2), VII.D. ("This policy cannot be changed nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator.").

Because the loss at issue occurred on April 14, 2014, Plaintiff's proof of loss was due to be submitted to Nationwide on or before June 13, 2014. Only one proof-of-loss form is part of the record, and it is dated July 3, 2014. Much of the information is typed into the form, with the spaces for a signature and the date left blank. Plaintiff's father testified that the local Nationwide agent prepared the proof-of-loss form and sent it to him for his signature. Plaintiff's father signed the form and returned it to the local agent, but he did not date the form, nor did he recall when he submitted the form to the local agent.

The fact that Plaintiff's father did not personally date the proof-of-loss form creates a triable issue of fact as to when Plaintiff submitted the proof of loss to Nationwide's agent. The policy terms require the insured to "send us a proof of loss" within sixty days of the loss. (Doc. 64-2 at 15, VII.J.4.) The policy defines

"us" as "the insurer." (*Id.* at 3, II.A.) That term is not defined within the policy, but the applicable regulations state that "[i]nsurance company or insurer means any person or organization authorized to engage in the insurance business under the laws of any State." 44 C.F.R. § 59.1. This definition would appear to include Plaintiff's local insurance agent. The terms of Plaintiff's policy thus provide for compliance with the proof-of-loss condition by submitting the proof of loss to the local insurance agent, even if Nationwide's corporate office did not receive the form until after June 13, 2014. Although Plaintiff's father testified that he "d[idn't] think [the date on the form] was falsified," the proof-of-loss form is deemed submitted on the date that Nationwide's local agent received it. Because Nationwide provides no evidence as to when the local agent received the form, summary judgment on the basis that the form was submitted outside of the sixty-day period is due to be denied.

### B. Coverage of Damages under Policy

Nationwide also argues that it is entitled to summary judgment because the damages Plaintiff seeks are not recoverable under the policy terms. Essentially, Plaintiff requests reimbursement for funds expended to stabilize the land and prevent future erosion—the "land damages"—and payment to relocate his home to prevent future flood loss—the "relocation damages." He does not seek payment

for the repairs to the deck or any other part of the structure. Plaintiff responds that the damages are covered according to the policy language.

To determine whether coverage exists under the policy, this Court interprets the policy according to federal law and applies standard insurance law principles. *Carneiro Da Cunha*, 129 F.3d at 584. This Court first "examine[s] the natural and plain meaning of [the] policy's language" and evaluates whether the terms are "clear and unambiguous." *See id.* at 585. "[A]mbiguity does not exist simply because a contract requires interpretation or fails to define a term." *Id.* Additionally, because the SFIP is issued pursuant to federal law, policyholders "are bound not only by the terms of the policy, but by the terms of the statute and the applicable regulations." *Id.*

In general terms, Plaintiff's policy provides insurance coverage for "direct physical loss by or from flood," which the policy defines as "[l]oss or damage to insured property, directly caused by a flood" that has resulted in "physical changes to the property." (Doc. 64-2 at 4, II.B.12.) A flood is defined as either "[a] general and temporary condition of partial or complete inundation of . . . normally dry land area" that is caused by "overflow of inland or tidal waters," "unusual and rapid accumulation or runoff of surface waters from any source," or mudflow; or "[c]ollapse or subsidence of land along the shore of a [body of water] as a result of

erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels." (*Id.* at 3, II.A.)

Both parties agree that the event that ultimately resulted in the damage to Plaintiff's home qualifies as a "flood" according to the terms of the policy. The parties disagree, however, about whether the flooding is the direct cause of Plaintiff's loss. Nationwide initially denied coverage based on its assessment that the flood caused "earth movement," which in turn caused the damage to the home, because the policy excludes "loss to property caused directly by earth movement even if the earth movement is caused by flood." (*Id.* at 11, V.C.) To be clear, Nationwide agrees that flood-related erosion that results in land subsidence is potentially covered under the policy language. (*Id.*) But any issue of fact relative to whether the actual cause of the damage was the flood or resulting "earth movement" is immaterial here. In its motion for summary judgment, Nationwide contends that even if any physical damage to Plaintiff's home were covered under the policy, the land and relocation damages are either not covered or excluded.

### 1. Land Damages

Nationwide contends that it is entitled to summary judgment with respect to Plaintiff's land damages because the relevant work was conducted on "land

adjacent to the insured dwelling" and the policy does not cover damages to land. Nationwide also argues that the work done to stabilize the bank "was a temporary solution to prevent the land from getting worse," rather than a repair of "direct physical loss by or from flood." Plaintiff responds that because the stabilized land is subterranean soil providing lateral and subjacent support to the dwelling, it is included within the definition of "dwelling," and the land exclusion applies only to "raw land that is not part of the 'dwelling.'"

The basis of Nationwide's argument that the land damages are not covered under the terms of the policy is that the relevant stabilization work was performed on the land, rather than on the home itself. "Land, land values, [and] lawns" are classified as property not covered under Plaintiff's policy. (*Id.* at 10, IV.6.) Plaintiff's effort to avoid this provision by including land providing lateral and subjacent support to the home within the definition of "dwelling" is foreclosed by the policy language. Specifically, the policy "insure[s] against direct physical loss by or from flood to . . . [t]he dwelling at the described location." (*Id.* at 5, III.A.1.) As relevant here, the policy defines "dwelling" as "[a] building designed for use as a residence." (*Id.* at 4, II.B.13.) "Building" is further defined as "[a] structure with two or more outside rigid walls and a fully secured roof, that is affixed to a permanent site." (*Id.*, II.B.6.a.) The term "dwelling" thus unambiguously includes

the structure affixed to the land, but not the land itself. Plaintiff seeks coverage for, according to the JFJ Excavating invoice and estimate, "river bank erosion mitigation" and "additional concrete work needed to substantially repair and stabilize [the] bank." This work is limited to the land and includes no repairs to Plaintiff's home. Therefore, summary judgment is due to be granted in favor of Nationwide with respect to the land damages.

### 2. Relocation damages

Nationwide also argues that it is entitled to summary judgment with regard to Plaintiff's "relocation damages."[2] According to Nationwide, the costs to prepare a home site and to disassemble, relocate, and reassemble the structure "do not qualify as a direct physical loss with evidence of physical changes from flood." Plaintiff, on the other hand, avers that these costs are included "within the general grant of coverage," citing *Gibson v. Secretary of U.S. Department of Housing & Urban Development*, 479 F. Supp. 3 (M.D. Pa. 1978). In *Gibson*, unlike in the present case, the parties agreed that "a change in the geographical structure surrounding the house" made it "impractical" to repair the damage to the home caused by the

---

[2] Both parties essentially agree that Coverage D – Increased Cost of Compliance, which provides coverage "to comply with a State or local floodplain management law or ordinance," does not apply to Plaintiff's loss. (Doc. 64-2 at 8, III.D.) Thus, this Court will not address that coverage provision.

flood. *Id.* at 6. The parties further agreed that "procuring a comparable replacement residence" was "a reasonable course of action under the circumstances" because a channel formed by the floodwaters "fill[ed] with water three to five times a year, subjecting the premises to an increased risk of flood damage." *Id.* at 4, 6. The court concluded that, given these agreed-upon facts, "the right to use [the] house as a residence . . . f[ell] within the definition of property covered under the insurance policy." *Id.* at 6. Although the government argued that the plaintiffs were entitled only to the amount necessary to make the repairs, the court held that the policy's provisions for replacement cost, rather than repair, of the covered property applied because the plaintiff had lost the ability to use the home as a dwelling or residence. *Id.* at 4, 6.

Even if it were binding on this Court, *Gibson* is inapplicable here. First, as Nationwide points out, the terms of Plaintiff's policy exclude coverage for loss of access and loss of use to the property, as well as "[a]ny other economic loss." (Doc. 64-2 at 11, V.A.) Thus, Plaintiff's policy precludes recovery of any damages caused by this loss of use. Further, the *Gibson* court based its holding on the fact that the parties essentially agreed that relocating the home was the most reasonable course of action under the circumstances. There is no such agreement in the instant case. Although Plaintiff's father stated that in his opinion, the home is not

"safe in large flood events" and that his son does not sleep there during heavy rains, Plaintiff provides no evidence that Nationwide represented to him or to his father that relocating the home is necessary because it is structurally unsound or otherwise unsafe. Their local insurance agent stated that if it were his house, he would move it further away from the river, but Plaintiff and his father ultimately decided on their own to move the house because they thought it would be "safer in the long run" and "more cost efficient" than continuing to stabilize the bank.

Nonetheless, even in the event of a covered loss, the policy language does not provide for compensation to relocate the home. *Gallup v. Omaha Prop. & Cas. Ins. Co.*, 282 F. App'x 317, 322 (5th Cir. 2008). Under the policy's terms, an insured may elect to receive either the cost "to repair or replace the damaged dwelling" or "[t]he actual cash value . . . of the damaged part of the dwelling." (Doc. 64-2 at 19, VII.V.) If the insured elects to replace the dwelling, payment "is limited to the cost that would have been incurred if the dwelling had been rebuilt at its former location." (*Id.*, VII.V.2.b.) Any potentially recoverable amount thus would not include the cost to construct a home pad at the new site or the cost to physically move the home, which are the damages Plaintiff seeks. (*Id.*) Additionally, to the extent that Plaintiff plans to relocate the home in order to protect it from future flood loss, the policy's coverage of "loss avoidance

measures" is limited the policyholder's reasonable expenses for sandbags, fill for temporary levees, pumps, and plastic sheeting and lumber, up to $1,000. (*Id.* at 7, III.C.2.a.) The costs to construct a home pad and move the home to a new site are not included within this coverage. Therefore, even if the loss were covered, Plaintiff cannot recover the costs to relocate the home under the terms of his policy. Summary judgment is due to be granted in favor of Nationwide with respect to the relocation damages.

## IV. Conclusion

As stated above, Nationwide's Motion for Summary Judgment (Doc. 62) is due to be granted. A separate order consistent with this opinion will be entered contemporaneously.